# United States District Court
# Northern District of Indiana
# Hammond Division

| | | |
|---|---|---|
| CHICAGO INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Cause No.: 2:07-CV-106 JVB |
| | ) | |
| THE HILLS INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This is a declaratory action case. Plaintiff Chicago Insurance Company and Defendant The Hills Insurance Company are separate providers of malpractice insurance policies to four hospital pharmacists, who have been sued in state court for medical malpractice. The Plaintiff has been paying for the pharmacists' defense, while the Defendant has taken the position that it owes no duty to contribute to the pharmacists' defense or any judgment that may be entered against them. Having completed discovery, the Plaintiff moved for summary judgment, asking the Court for a declaration that the Defendant must contribute its share for the pharmacists' defense and any judgment that may be obtained against them. In turn, the Defendant moved for summary judgment asking the Court to clear it of any obligation to the pharmacists.

On May 21, 2009, the Court held an oral argument on the parties' motions. After the argument, the parties filed supplemental briefs. The case is now ripe for ruling.

For the reasons explained below, both parties' motions are granted in part and denied in part.

**A. Motion for Summary Judgment Standard**

Summary judgment is appropriate by the terms of Federal Rule of Civil Procedure 56(c)

only where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law."*Id*. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir.1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id*. at 648. "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). Mindful of these standards, the Court now turns to the parties' motions.

**B. Facts**

The parties agree that the following are undisputed material facts:

**(1)** *The Underlying Case*

In August 2003, Sophie Geras was treated at St. Anthony Medical Center for a hip fracture. During her hospitalization, Mrs. Geras's doctor ordered four doses of iron to be administered to her on August 6, 2003. Allegedly, when the prescription was filled, the one-day limit went unnoticed. Instead, Mrs. Geras received four doses of iron daily for the next twenty-eight days, and seemingly died as a result of an iron overdose.

George Geras and the Estate of Sophie Geras subsequently submitted liability claims against the Medical Center and the pharmacists. In May 2005, before any lawsuit was filed, the Defendant settled the malpractice claims against the Medical Center for $250,000, the statutory cap on damages for a hospital under the Indiana Medical Malpractice Act.[1] The settlement released the Medical Center and various related entities "other than the Independently Insured Pharmacists" from liability (Pl.'s Ex. B, Confidential Release and Indemnity Agreement at 1.) Also, Mr. Geras and the Estate agreed that if they "obtain[] a judgment against any [pharmacists], [they] will limit any attempt to recover such judgment or settlement solely to proceeds of insurance from policies issued by insurers other than St. Anthony Medical Center's insurer." (Pl.'s Ex. B, Addendum to Confidential Release and Indemnity Agreement at 6.) Neither the pharmacists nor the Plaintiff, their malpractice insurance carrier, were parties to the settlement agreement.

The Defendant was aware during settlement discussions with Mr. Geras and the Estate's counsel that counsel intended to sue the pharmacists after the Medical Center was released, and that a judgment could still be entered against the pharmacists.

In August 2005, Mr. Geras and the Estate sued the pharmacists—Michael Olson, Nancy Pena-Hanc, Teri Kolczak, and Chris Hall—in Indiana state court. All four pharmacists tendered the defense of this action to the Defendant on multiple occasions. The Defendant rejected the tenders and has consistently refused to defend the pharmacists or to indemnify them in case of any judgment against them. The Defendant claims that it has no duty to defend the pharmacists because its insurance policy provides that "[t]he Company shall not be obliged to pay any Claim or Judgment or to defend any suit after the applicable limit of The Company's liability has been

---

[1] Ind. Code 34-18-1 *et seq.*

exhausted by payment of judgments or settlements." (Pl.'s Ex. H at 7.) According to the Defendant, it has exhausted its liability to the pharmacists by paying Mr. Geras and the Estate $250,000 on behalf of the Medical Center and by structuring the settlement agreement with Mr. Geras and the Estate in such a way that their collection of any judgment against the pharmacists would be limited to the Plaintiff's insurance policy limits. (*Id.*)

**(2)** *The Insurance Policies*

At the time of Mrs. Geras's death, the pharmacists were each insured under the Plaintiff's liability policies in the following amounts:

- Olson—$1,000,000 limit of liability per incident / $3,000,000 aggregate;
- Pena-Hanc—$1,000,000 / 3,000,000;
- Kolczak—$2,000,000 / 4,000,000; and
- Hall—$2,000,000 / $4,000,000.

All four policies require the Plaintiff to pay for the insured's obligations resulting from professional liability to another:

> [T]he Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages because of Bodily Injury or Property Damage caused by an Incident, or Personal Injury, to which this insurance applies in the operation of the business or conduct or the profession of the Named Insured . . . which occurs during the Policy Period.

(Pl.'s Ex. I, Pl.'s Ins. Policy at 1.)

The policies also mandate the Plaintiff to defend the pharmacists in any suit against them arising out of claims of professional malpractice:

> As respect coverage(s) provided by this insurance, the Company shall have the right and duty to defend any Suit against the Insured seeking Damages on account of such Bodily Injury, Property Damage, Personal Injury or Advertising Injury, even if any of the allegations of the Suite are groundless, false or fraudulent, but

4

> the Company shall not be obligated to pay any claim or judgment or continue to defend any Suit after the applicable limit of the Company's liability has been exhausted by payment of Damages.

(*Id.*)

In addition to the Plaintiff's policies, the pharmacists were also covered by a Comprehensive General Liability Hospital Professional Policy, issued by the Defendant to the Medical Center. The Defendant's policy provides $5,000,000 of liability coverage for each occurrence and $20,000,000 in the aggregate. The Defendant concedes that the four pharmacists qualify as "insureds" under its policy for purposes of the claims asserted by Mr. Geras and the Estate.

The Defendant's insurance policy, like the Plaintiff's, requires the Defendant to pay for the insured's obligations resulting from professional liability to another and to defend the insured in any lawsuit arising out of an allegation of professional malpractice:

> The Company shall indemnify an Insured for all sums that the Insured shall become Legally Obligated to pay as Damages, as a result of injury to any person arising out of the performance of Professional Services rendered, or that should have been rendered, by the Insured if such rendering of or failure to render Professional Services occurs during the Policy Period and within the Policy Territory.
>
> The Company shall have the right and duty to defend any suit against an Insured seeking Damages because of such injury even if any of the allegations of the suit are groundless, false or fraudulent. The Company may make such investigation and settlement of any Claim or suit as it deems expedient. The Company shall not be obligated to pay any Claim or judgment or to defend any suit after the applicable limit of The Company's liability has been exhausted by payment of judgments or settlements.

(Pl.'s Ex. J, Def's Ins. Policy at 1.)

Likewise, both the Plaintiff's and the Defendant's policies allocate payments when the insured has another insurance policy covering the same loss. For example, the Plaintiff's policy states:

OTHER INSURANCE: If there is other valid insurance (whether primary, excess, contingent or self-insurance) which may apply against a loss or claim covered by this policy, the insurance provider hereunder shall be deemed excess insurance over and above the applicable limit of all other insurance or self-insurance. When this insurance is excess, the Company shall have no duty under this policy to defend any claim or Suit that any other insurer or self-insurer has a duty to defend. If such other insurer or self-insurer refuses to defend such claim or Suit, the Company shall be entitled to the Insured's rights against all such other insurers or self-insurers for any Claims Expenses incurred by the Company.

When both this insurance and other insurance or self-insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss or defense costs than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid collectible insurance against such loss. Subject to the foregoing, if a loss occurs involving two or more policies, each of which provides that its insurance shall be excess, each will contribute pro rata.

((Pl.'s Ex. I, Pl.'s Ins. Policy at 110–11.)

The Defendant's policy mirrors the Plaintiff's:

Other Insurance
The insurance afforded by this policy (including the endorsement hereto) is primary only when there is no other valid and collectible primary insurance available to the Insured and applicable to any part of the limits of liability provided in this policy.
When this insurance is primary and an Insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of The Company's liability under this policy shall not be reduced by the existence of such other insurance.
When both this insurance and other insurance apply to the loss on the same basis, except when both are primary, The Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all such other valid and collectible insurance provides for contribution by equal shares, The Company shall not be liable for a greater proportion of such loss that would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

6

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, The Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

(Pl.'s Ex. J, Def's Ins. Policy at 21–22)

**C. Discussion**

This case presents two issues:

(1) Is the Defendant required to contribute to the pharmacists' defense in the state court lawsuit and pay a share of any judgment against them?

(2) If so, what is the proportion of the Defendant's contribution?

**(1)** *The Defendant's Obligations*

Before the oral argument, the Defendant argued that Plaintiff bore the entire financial burden of the pharmacists' defense and that Plaintiff was 100% liable for any judgment against the pharmacists. The Defendant based its argument on the belief that it had exhausted its obligations to the pharmacists by paying $250,000, the maximum liability amount for a hospital in a medical malpractice case, to Mr. Geras and the Estate[2] on behalf of the Medical Center and by "negotiating an agreement whereby Claimant limited any attempt to recover a judgment or settlement solely to the proceeds of the [Plaintiff's] policies, and receiving an indemnification agreement from the Claimant for any additional liability that may be imposed upon [the Medical Center] or [the Defendant]." (Def.'s Resp. at 7.) The Defendant maintained that, since the

---

[2]To avoid confusion, from here on, the Court will refer to Mr. Geras and the Estate as Claimants.

7

Claimant agreed to collect a judgment only from the proceeds of the Plaintiff's insurance policies, the pharmacists are not legally obligated to pay any damages, thus making contributions from the Defendant unnecessary. According to the Defendant, any challenge to this logic "is nonsensical form over substance." (*Id.*)

At the hearing, and in subsequent briefs, the Defendant conceded that the Claimants could recover against the Plaintiff only a pro rata share of Plaintiff's obligations. That is, by releasing the Defendant, the Claimants released the Defendant's portion of any judgment they may recover against the pharmacists. As to this issue, the parties disagree only as to the appropriate method for allocating the proportions of their obligations. But as to the issue of whether the Defendant must contribute to the pharmacists' defense, the Defendant is adhering to its original position, that is, that having settled its portion of the case with the Claimants on behalf of the pharmacists, it is relieved of any obligation to further defend them.

(a) *Contribution to the Pharmacists' Defense*

The Defendant is not required to contribute to the pharmacists' defense. The Defendant's policy obliges the Defendant to defend any suit against the insureds even if the suit is "groundless, false, or fraudulent." (Pl's Ex. J, Def.'s Ins. Policy at 2.) However, the Defendant "may make such . . . settlement of any Claim or suit as it deems expedient." (*Id.*) Moreover, the Defendant "shall not be obligated . . . to defend any suit after the applicable limit of the [Defendant's] liability has been exhausted by . . . settlements." (*Id.*)

The Defendant settled its portion of the Claimants' claims against the pharmacists as part of the settlement between the Claimants and the Medical Center. Thus the applicable limit of its liability has been exhausted by settlement, as provided in the insurance policy, excusing the Defendant from contributing to the pharmacists' defense. Apart from timing, this aspect of the

case is not different from an ordinary situation where two insurance companies are contributing to the defense of a lawsuit, but one drops out after it settles with the plaintiff. *See Loy v. Bunderson*, 320 N.W.2d 175, 190–91 (Wis. 1982). In the instant case, the Defendant settled with the Claimants at the inception of the case, hence excusing it from the obligation to defend the pharmacists early on. After all, if the pharmacists were covered only by the Defendant's insurance policy, the Claimants would no longer have had a lawsuit against them. Although it does seem unfair that the Plaintiff must pay the whole bill for the pharmacists' defense while it is exposed to only a fraction of any possible liability, the tables could have been switched around just as easily if the Plaintiff had decided to settle first. Moreover, the Plaintiff's insistence that the Defendant is required to contribute to the pharmacists' defense so long as the amount it has actually paid is less than the policy limits is contrary to the plain language of the insurance policy itself: the Defendant "shall not be obligated . . . to defend any suit after the applicable limit of the [Defendant's] liability has been exhausted by . . . settlements." (*Id.*)

(b) *Contribution to any Judgment Against the Pharmacists*

The Defendant correctly admits that the Plaintiff is liable for only a portion of any judgment that may issue against the pharmacists. As an additional insurer, the Defendant is liable for the remainder of the judgment. Whether, under the settlement agreement, the Claimants are able to collect the Defendant's portion of liability is a separate question, which is not before the Court. Therefore, the Court only needs to determine the pro rata share of the parties' obligations.

Both parties agree that if two policies contain "other insurance" clauses stating that its insurance is "excess" over other valid insurance—as is the case here—these conflicting provisions are disregarded and each "excess" insurer shares primary liability for the loss, which

is prorated on the basis of the liability limits of each insurer. *See Ind. Ins. Co. v. Am. Underwriters, Inc.*, 304 N.E.2d 783 (Ind. 1973). They do disagree, however, as to how the payments should be calculated.

The Defendant maintains that its policy limit as to all pharmacists together is $5,000,000 because the alleged negligence of all four pharmacists constitutes only a single medical occurrence. The Defendant then wants to reduce its share by the $250,000 it paid to the Claimants on behalf of the Medical Center. Accordingly, the Defendant submits that the Plaintiff's share in the lawsuit against the pharmacists is 56% (the proportion of the combined limits under the Plaintiff's policies ($6,000,000) compared to the total remaining combined limits ($10,750,000)) and the Defendant's share is 44%:

| Pharmacist | Pl.'s Ins. Limits | Def.'s Ins. Limits | Pl.'s Pro Rata | Def's Pro Rata |
|---|---|---|---|---|
| Olson | $1,000,000 | | | |
| Pena-Hanc | $1,000,000 | | | |
| Kolczak | $2,000,000 | | | |
| Hall | $2,000,000 | | | |
| **Total Ins. Limit** | **$6,000,000** | **4,750,000** | **56%** | **44%** |

The Plaintiff, on the other hand, contends that the Defendant's policy limits in this case are $5,000,000 as to each pharmacist because each pharmacist's alleged negligence was a separate occurrence under the Defendant's insurance policy. The Plaintiff reduces the Defendant's by the $62,500 it paid to the Claimants on behalf of each pharmacist ($250,000 / 4 = $62,500). The Plaintiff, therefore, proposes the following ratios of liability:

| Pharmacist | Pl.'s Ins. Limits | Def.'s Ins. Limits | Pl.'s Pro Rata | Def's Pro Rata |
|---|---|---|---|---|
| Olson | $1,000,000 | $4,937,5000 | 17% | 83% |
| Pena-Hanc | $1,000,000 | $4,937,5000 | 17% | 83% |
| Kolczak | $2,000,000 | $4,937,5000 | 29% | 71% |
| Hall | $2,000,000 | $4,937,5000 | 29% | 71% |

Either formula could be correct depending on the theory of the pharmacists' liability, if any. But at this point, this theory remains unknown, rendering the Court's decision impossible. The parties only speculate as to what happened, with the Defendant claiming that the pharmacists' acts were related and the Plaintiff alleging the opposite. Therefore, although the Court finds that the parties' obligations are prorated, the ratios cannot be determined at this time.

## D. Conclusion

The Court grants in part and denies in part the Plaintiff's motion for summary judgment (DE 48). The Court also grants in part and denies in part the Defendant's cross-motion for summary judgment (DE 52).

In accordance with its insurance policy covering the pharmacists, the Defendant is not obligated to contribute to the pharmacists' defense in the Claimants' lawsuit against them in state court. However, the Defendant's insurance policy requires that any judgment against the pharmacists be divided between the Plaintiff and the Defendant pro rata. However, the ratios of their obligations cannot be determined at this time because the parties have not provided sufficient information from which to determine if the pharmacists' alleged acts and omissions constitute a single or separate medical occurrences.

The Court sets a telephonic status conference for October 27, 2009, at 1:30 pm.

SO ORDERED on September 30, 2009.

    S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE